**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                          |     |                          |
|--------------------------|-----|--------------------------|
| LAWRENCE DEACON,         | )   |                          |
|                          | )   |                          |
| Plaintiff,               | )   | Case No. 16-cv-1464      |
|                          | )   |                          |
| v.                       | )   | Judge Robert M. Dow, Jr. |
|                          | )   |                          |
| PENINSULA CHICAGO, LLC,  | )   |                          |
|                          | )   |                          |
| Defendant.               | )   |                          |
|                          | )   |                          |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lawrence Deacon was told he was fired from his position as a carpenter with Defendant Peninsula Chicago, LLC for being in a hotel guest room while performing non-work-related functions. He brings this lawsuit alleging that he was actually fired in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and as retaliation for filing a workers' compensation claim. Currently before the Court is Defendant's motion for summary judgment [19]. For the reasons set forth below, Defendant's motion [19] is granted. The Court will enter final judgment and close the case.

**I.      Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits:  (1) Defendant Peninsula Chicago, LLC's Local Rule 56.1 Statement of Undisputed Material Facts [21], (2) Plaintiff Lawrence Deacon's Local Rule 56.1(b)(3) Response to Defendant's Statement of Undisputed Material Facts and Local Rule 56.1(b)(3)(C) Statement of Additional Facts Requiring the Denial of Defendant's Motion for Summary Judgment [28], and (3) Defendant's Response to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts [26]. The Court views the record in the light most

favorable to the nonmoving party—here, Plaintiff—and construes all facts in his favor. *Ellis v. DHL Express, Inc.*, 633 F.3d 522, 525 (7th Cir. 2011). Before discussing those facts, the Court turns to the requirements of Local Rule 56.1.

**A.     Local Rules**

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. Each party opposing a motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(1), (3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). "A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In other words, Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585.

Many of Plaintiff's responses to Defendant's Statement of Facts [28] do not comply with these requirements. In particular, many of Plaintiff's denials lack citations to the record and are based only on his "lack of direct knowledge" of the asserted fact. See, *e.g.*, [28] at ¶ 21

("Riordan and Cychosz reviewed Plaintiff's work restrictions; they had concerns that the restrictions would prevent Plaintiff from performing many of the tasks associated with the carpentry work needed done at the hotel. (Exhibit C – Riordan Aff., ¶¶ 13–14; Exhibit D – Cychosz Dep., p. 25). RESPONSE: Disputed. Plaintiff lacks direct knowledge of this and therefore disputes it."). Although the Court draws all inferences in Plaintiff's favor, an adequate rebuttal of a supported assertion of fact requires a citation to specific support in the record; this type of response by Plaintiff is inappropriate as it neither admits nor denies Defendant's facts *and* is unsupported by citations to the record. *Ace Hardware Corp. v. Landen Hardware, LLC*, 883 F. Supp. 2d 739, 742–43 (N.D. Ill. 2012). One consequence of Plaintiff's failure to comply with Local Rule 56.1 is that the Defendant's factual allegations to which the inadequate responses are directed are deemed admitted insofar as they are supported by the record. *Id.*; *De v. City of Chicago*, 912 F. Supp. 2d 709, 712–13 (N.D. Ill. 2012) (citing L.R. 56.1(b)(3)(C)); see *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1017 (N.D. Ill. 2016). Accordingly, the Court disregards the following of Plaintiff's responses to Defendant's statement of facts for failure to comply with the Local Rule: [28] at ¶¶ 21-23, 34, 37, 59, 65, 68, 69.[1]

---

[1] Defendant also objects to two of the exhibits Plaintiff cites in his own statement of additional facts as improper. These exhibits, see [28] at 20 ("Exhibit F") and 21 ("Exhibit G"), are publically accessible printouts of "case dockets" from the Illinois Workers' Compensation Commission's website for Plaintiff's and John Pinksi's cases. See Illinois Workers' Compensation Commission, Case Information Screen, available at https://neonwebk.cmcf.state.il.us/iic/icdw. Defendant objects to their inclusion in the record arguing that (1) they were not produced by Plaintiff in discovery and (2) they lack foundation and are inadmissible hearsay. The Court disagrees that these printouts must be excluded for the reasons offered by Defendant, as courts may take judicial notice of matters of public record, including dockets and opinions. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); see also *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006). In any event, in this opinion, the Court only discusses (1) the date of Plaintiff's workers' compensation claim filing, which Defendant explicitly does not dispute (although Defendant claims that this information is immaterial), see [26] at ¶ 5; and (2) the fact that John Pinski filed a workers' compensation claim at some point during his employment with Defendant, which Defendant has admitted in a declaration submitted in connection with its responses to Plaintiff's statement of additional facts, see [26-2] at ¶ 3.

**B.    Facts**

Turning to the facts of the case, Defendant hired Plaintiff to work as a carpenter in the Engineering Department of The Peninsula Hotel in downtown Chicago in April 2002.  [21] at ¶ 4.  As a carpenter, Plaintiff was responsible for maintaining the hotel's furniture, building necessary items to support the hotel, and completing all assignments given to him by the Director of Engineering.  *Id*. at ¶ 8.  Ray Cychosz served in the Director post from 2009 to 2015.  *Id*. at ¶ 9.  In the course of his duties, Plaintiff generally would attend a morning meeting to receive his initial work assignment.  He would receive additional assignments and communications throughout the day by radio.  *Id*. at ¶ 35.  Plaintiff testified that hotel paperwork, such as policy changes, would also be addressed during the morning meetings.  See [21-2] (L. Deacon Dep.) at 22:14–23:2.

The Peninsula's Employee Handbook contains Equal Employment Opportunity and Harassment policies that prohibit discrimination and harassment based on protected characteristics under the law, including disability status.  See [21-4] (Employee Handbook) at 14–16.  The policies instruct individuals who suspect policy violations to report the violations to the Human Resources Department or an uninvolved supervisor.  *Id*.  The Handbook also contains a specific policy regarding employees with disabilities, which states that the hotel will not tolerate discrimination on the basis of a disability and that it will make reasonable accommodation upon its employees' requests, unless an accommodation would cause undue hardship to the hotel's business.  See *id*. at 15.  In addition to these policies, the Handbook contains certain "Workplace Rules," including, as relevant, the following rule about "Use of Facilities":  "Employees are not allowed to visit areas other than their assigned work area while on duty, nor are they allowed to visit guestroom floors or use guest elevators except in the scope

of their work assignment/position, even at the invitation of the guest." *Id.* at 41.  In line with this formal rule, Plaintiff testified that he understood that, "[a]s a rule," he was only supposed to be in a guest room when there was work to be done in the room.  See [21] at ¶ 66; [21-2] at 21:21–24.

Plaintiff testified that, at some point in 2004, he was diagnosed with both diabetes and hypertension.  [21] at ¶ 12.  Plaintiff testified that he told his "supervisor" "right away," who at that time was Cychosz; Plaintiff did not tell "management" and he did not know if "management" knew about his conditions.  *Id.*; [21-2] at 32:4–12, 33:14–34:6.  Plaintiff also testified that he did not at any time request accommodations for either his diabetes or his hypertension.  See [21-2] at 33:5–8, 34:7–9.  At work after his diagnoses, Plaintiff carried a glucose meter and a blood pressure monitor in a backpack, which he would place on a work cart that he kept with him.  [21] at ¶ 39, 42–43.

While at work in December 2012, Plaintiff sustained a knee injury.  *Id.* at ¶ 13.  He reported the injury to Cychosz and was assigned "light tasks in the carpenter's shop, furniture repairs, and other miscellaneous tasks."  *Id.* at ¶¶ 14, 16.  Plaintiff underwent surgery for the injury in February 2013; he filed a worker's compensation claim on account of the injury in July 2013.  See [21] at ¶ 15; [28] (Plaintiff's Additional Facts) at ¶ 5; [26] at ¶ 5.  The record reflects that Cychosz and Larry Riordan, the Director of Human Resources for the hotel, were generally aware of Plaintiff's workers' compensation filing.  See [21-10] (R. Cychosz Dep.) at 21:10–12; [21-3] (L. Riordan Aff.) at ¶ 10.  On August 23, 2013, Plaintiff obtained a "Return to Work" note from his doctor.  See [21-2] at 72 (8/22/13 Return to Work Note).  The note stated that Plaintiff could return to work as on August 26, 2013, and it described his "lower extremity restrictions" as follows:  "May stand/walk.  Avoid twisting activities which may cause knee to lock or give way. Avoid heavy lifting over 50 pounds, and avoid kneeling.  May miss work to attend follow-up

appointments." *Id*. Plaintiff believed that his doctor also had restricted him from using ladders and stairs, although Plaintiff acknowledges that this additional restriction was not reflected in the Return to Work note. [21] at ¶ 19. Plaintiff provided the Return to Work note to Cychosz and Riordan.

Cychosz and Riordan reviewed the note. Because they had concerns that Plaintiff's restrictions prevented him from performing carpentry work, they assigned him temporarily to painting duties. Specifically, Plaintiff was tasked with painting electrical closets. Cychosz and Riordan believed this task complied with Plaintiff's medical restrictions. See [21] at ¶¶ 21-23. Cychosz called Plaintiff and gave him the temporary assignment; Plaintiff explained to Cychosz that he was a carpenter, not a trained painter. See *id*. at ¶ 24; [28] at ¶ 24. In fact, Plaintiff had not been asked to paint at the hotel at any time prior. See [21-2] at 19:16–20:1. The parties do not dispute that there was "a lot of carpenter work and furniture work to do" at this time. [28] at ¶ 1; [26] at ¶ 1.

Plaintiff returned to work on August 26, 2013 and began painting electrical closets. [21] at ¶¶ 25–26. The painting required some ladder work. Accordingly, Plaintiff painted as high as he could reach, and at times, other employees painted areas that required the use of a ladder. *Id*. at ¶¶ 26–28. After a little over a week of painting closets, Plaintiff obtained a second "Return to Work" note from his doctor, dated September 5, 2013. See [21-2] at 73 (9/5/13 Return to Work Note). The "lower extremity restrictions" in the new note read: "May stand/walk on level ground. Avoid twisting activities which may cause knee to lock or give way. Avoid heavy lifting over 50 pounds, and avoid kneeling. No ladders." See *id*. Plaintiff gave the second note to Cychosz on September 6, 2013, and relayed to Cychosz that his leg was swollen and that his doctor had instructed him to stay off ladders. [21] at ¶ 31. Cychosz responded that he did not

know what to do with Plaintiff, but that he would discuss the situation with Riordan. *Id*. Cychosz and Riordan subsequently tasked Plaintiff with painting steps and handrails in the stairways, which did not involve ladder work. *Id*. at ¶¶ 32–33. Cychosz and Riordan believed that the new painting task complied with Plaintiff's modified medical restrictions and would be easy for him to perform. *Id*. at ¶ 34.

Plaintiff's duties were not the only aspect of his job that changed after his surgery. He also was not provided with a radio upon his return. According to Cychosz, Plaintiff did not need a radio because he was performing painting work and not answering work calls. *Id*. at ¶ 36. Plaintiff was also instructed by Cychosz not to attend the morning assignment meetings for the same reasons. *Id*. at ¶ 38. In addition, on September 11, 2013, two supervisory individuals in Plaintiff's chain of command, on Cychosz's instruction, told Plaintiff that he could no longer carry his backpack on the job. *Id*. at ¶ 44. Cychosz testified that he issued this instruction because he had thought Plaintiff was carrying crossword puzzles and dictionaries in his backpack. *Id*. at ¶ 45; see also [21-10] at 41:7–10. Plaintiff immediately brought the issue to the attention of the Human Resources Department. [21] at ¶ 46. Specifically, he told Riordan that he carried medical supplies in his backpack. *Id*. at ¶ 48. Riordan suggested that Plaintiff get a smaller bag for his medical equipment and said that he would address the issue with Cychosz, which he did. *Id*. at ¶ 49. Plaintiff did not have any further discussions with any supervisory or management-level employees about his backpack. *Id*. at ¶ 51. He continued to keep it with him and he was not disciplined for doing so. *Id*. at ¶¶ 50–51.

Plaintiff continued to perform his temporary duty of painting stairs and handrails. While on duty on September 23, 2013, Plaintiff went to a guest room on the 14th floor to discuss a paint issue with his then-supervisor, paint foreman Matt Griskell. *Id*. at ¶ 56; [28] (Plaintiff's

Additional Facts) at ¶ 4. Griskell was apparently disabled, although the parties dispute whether Defendant was aware of this fact. [28] at ¶ 71. In any event, Plaintiff needed to discuss the paint issue with Griskell in person because Plaintiff did not have a radio. *Id.* (Plaintiff's Additional Facts) at ¶ 3. He found Griskell sitting at a desk in the room. [21] at ¶ 57. Plaintiff and Griskell discussed Plaintiff's paint question, and Griskell then asked Plaintiff a question about a crossword puzzle. *Id.* at ¶ 58. At that moment, Phil Tsillis, the hotel's Director of Housekeeping, entered the guest room and saw Griskell seated at the desk with Plaintiff standing behind him. *Id.* at ¶¶ 52, 59–60. Tsillis immediately reported the incident to the hotel's general manager, Maria Zec. *Id.* at ¶ 65. The next day, both Plaintiff and Griskell were suspended pending investigation. *Id.* at ¶ 67. Riordan and Zec ultimately decided to terminate Plaintiff's employment on September 27, 2013 for being in a guest room while performing non-work-related functions. *Id.* at ¶¶ 68, 70. Cychosz was not involved in the decision. *Id.* at ¶ 69. Griskell was also fired.

It is undisputed that from August 26, 2013 until his termination, Plaintiff did not make any reports of discrimination, harassment, or retaliation to the hotel's Human Resources Department. *Id.* at ¶ 72. Finally, Plaintiff admits that he never heard Cychosz, Riordan, or Zec make any derogatory or discriminatory comments about his disability, medical conditions, or worker's compensation claim, and Cychosz denied harassing or retaliating against Plaintiff on the basis of his medical conditions, work restrictions, or workers' compensation claim. *Id.* at ¶¶ 74–75.

On March 18, 2014, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), which simultaneously functioned as a complaint with the U.S. Equal Employment Opportunity ("EEOC"). See *Garcia v. Village of Mount Prospect*, 360 F.3d

630, 642 n.13 (7th Cir. 2004) (noting that, under the dual filing system, filing a claim with the EEOC "is also considered to be a filing with the corresponding state agency, and vice versa"); see also *Davis v. Metro. Pier & Exposition Auth.*, 2012 WL 2576356, at *9 (N.D. Ill. July 3, 2012) (describing the IDHR–EEOC workshare agreement). Plaintiff filed a "technical amendment" to his charge on April 22, 2015. The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on July 29, 2015; the EEOC issued a Dismissal and Notice of Rights on February 2, 2016 that adopted the findings of the IDHR. Plaintiff field a two-count complaint on September 25, 2015 in the Circuit Court of Cook County for unlawful discrimination in violation of the ADA (Count I) and retaliatory discharge in violation of Illinois state law (Count II). Defendant removed the case to federal court and now moves for summary judgment.

## II.     Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiffs). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 252.

## III.    Analysis

According to Plaintiff, his complaint asserts claims of disparate treatment in violation of the ADA, failure to accommodate in violation of the ADA, harassment in violation of the ADA, [2] and Illinois retaliatory discharge. Defendant moves for summary judgment on all claims, arguing that Plaintiff's failure to accommodate and harassment claims are procedurally barred

---

[2] Count I of Plaintiff's complaint alleges "Unlawful Discrimination." The Count is comprised of two paragraphs of allegations: one that simply incorporates the preceding general factual paragraphs by reference and one alleging that "Defendant's actions and conduct described above constitute the following: Unlawful discrimination on the basis of disability in violation of the [ADA], including, but not limited to harassment and disparate treatment." See [1-1] at ¶¶ 13–14. Plaintiff argues that these two paragraphs contain all three of his ADA-based claims.

and that Plaintiff lacks evidence to survive summary judgment on all claims. The Court will address each argument in turn.

## A. Procedural Bar

Defendant argues that Plaintiff's ADA harassment and failure to accommodate claims are procedurally barred because Plaintiff did not raise these claims in his charge of discrimination (original or amended). "Generally, a plaintiff may not bring claims under [ADA] that were not originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). An exception to this rule is if a claim is "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); accord *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011) ("[I]f certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'") (citation omitted). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee complains." *Patterson v. Triangle Tool Corp.*, 2016 WL 5374123, at *2 (E.D. Wis. Sept. 26, 2016) (citation omitted). "[C]laims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original).

Whether the federal claims are within the scope of the charge of discrimination is a question of law. *Conner v. Ill. Dep't of Nat'l Resources*, 413 F.3d 675, 680 (7th Cir. 2005).

Because the charge of discrimination and the investigation report are in the record, the Court will consider both documents to determine what claims were communicated to the IDHR and Defendant during the investigation. See *Flower v. City of Chicago*, 850 F. Supp. 2d 941, 944 (N.D. Ill. 2012) (considering the course of the IDHR's investigation when determining whether the claim in the complaint was like or reasonably related to the allegations in the charge of discrimination).

Plaintiff's five-page charge states that his discrimination lasted from September 24, 2013 to September 27, 2013 and contains the following issue headings:

I. SUSPENSION – SEPTEMBER 24, 2013, DUE TO MY DISABILITY, MENISCUS TEAR IN RIGHT KNEE

II. SUSPENSION – SEPTEMBER 24, 2013, DUE TO MY DISABILITY, DIABETES

III. SUSPENSION – SEPTEMBER 24, 2013, DUE TO MY DISABILITY, HYPERTENSION

IV. DISCHARGE – SEPTEMBER 27, 2013, DUE TO MY DISABILITY, MENISCUS TEAR IN RIGHT KNEE

V. DISCHARGE – SEPTEMBER 27, 2013, DUE TO MY DISABILITY, DIABETES

VI. DISCHARGE – SEPTEMBER 27, 2013, DUE TO MY DISABILITY, HYPERTENSION

VII. DISCHARGE – SEPTEMBER 27, 2013, DUE TO MY AGE, 60

See [21-2] at 80–84 (April 22, 2015 Amended Charge of Discrimination). Each disability-related charge (I through VI) contains the same five "Prima Facie Allegations," with minor variations on paragraph 4 to correspond to the complained-of action—suspension or termination:

1. "I am an individual with a disability as defined within the Illinois Human Rights Act."

2. "Respondent is aware of my disability."

3. "My work performance as a carpenter supervisor met Respondent's expectations. I was hired on April 18, 2002."

4. [For I–III] "On September 24, 2013, I was informed by Larry Riordan, Human Resource Director, that I was suspended for three days. The reason

12

given was due to being in an unauthorized area." / [For IV–VI] "On September 27, 2013, I was informed by Larry Riordan, Human Resource Director, that I was discharged. The reason given was because I was in an unauthorized area."

5. "My disability is unrelated to my ability to perform the essential functions of my job duties with reasonable accommodations."

See *id.*[3] The charge does not contain any further allegations or description of the discriminatory conduct.

### 1. Harassment

Defendant first argues that Plaintiff's allegations about the events of September 24 and 27 are insufficient to exhaust administrative remedies for his claim that he was "harassed" because of his disability. Plaintiff argues that the harassing conduct includes: "(1) being told not to carry his backpack containing medical supplies; (2) receiving duties that involved ladders and stairs contrary to his medical restrictions; (3) [being] assigned the job of painter when his actual position was that of carpenter; (4) having his radio taken away from him; and (5) being excluded from morning meetings." [29] at 5. It is undisputed that Plaintiff did not mention harassment, nor did he describe or reference any of the five instances of allegedly harassing conduct, in his charge of discrimination. See generally [21-2] at 80–84. It is also undisputed that Plaintiff's charge limited the dates of the alleged discrimination to September 24, 2013–September 27, 2013, and that the alleged harassment began on August 26, 2013 when Plaintiff returned to work.

Nevertheless, Plaintiff claims (without citation to the record or relevant case law) that these instances of harassment are all reasonably related to his discrimination claims premised on his suspension and termination. But Plaintiff does not explain how his harassment and discrimination claims are based on the same conduct, and the Court fails to see how they are.

---

[3] Plaintiff testified that the he did not draft the administrative charges. He received them, verified their correctness, signed them, and returned them. See generally [21-2] at 195:5–200:17.

Instead, Plaintiff conflates his two claims: he appears to argue both that the five instances described above constituted a separate claim of workplace disability harassment *and* that they serve as evidence that Defendant's stated reason for terminating his employment was pretextual. Plaintiff's IDHR charge does not contain this argument (or any variant of it), and Plaintiff does not otherwise appear to have made this same argument to the IDHR.

To be fair, Plaintiff argues here that "all five of these instances were addressed" in the IDHR investigation. [29] at 5. Although this is Plaintiff's most compelling argument, he is only partially correct. The IDHR's Notice of Dismissal states that Plaintiff offered evidence in support of his suspension claims (I–III) that (1) he was unable to carry his diabetic supplies with him on the job during the final weeks of his employment, and (2) Defendant assigned him painting duties that violated his medical restrictions. See [21-8] (Notice of Dismissal for Lack of Substantial Evidence) at 6–7. But the Notice of Dismissal does not reflect that Plaintiff levied any allegations of—or even mentioned—harassment in the proceeding, and the IDHR did not discuss Plaintiff's fleeting allegations about the diabetic supplies or painting duties in analyzing his suspension claims (or termination claims, for that matter). Nothing in the IDHR charge or Notice of Dismissal indicates that Plaintiff alleged disability harassment in that forum or that the resultant investigation encompassed such claims. See *Fantozzi v. Winston & Strawn LLP*, 2011 WL 3704930, at *5 (N.D. Ill. Aug. 17, 2011) (harassment claim was not reasonably related to EEOC charge alleging race discrimination); see also, *e.g.*, *Flower*, 850 F. Supp. 2d at 945 (pregnancy discrimination claim was not properly exhausted where, although plaintiff made reference to maternity leave in connection with her administrative charge, she did so only as part of a description of events surrounding a separate claim, not as part of a claim for pregnancy discrimination).

Independent from the conclusion that the harassment claim did not develop from the IDHR investigation's investigation, the Court does not agree that Plaintiff's current harassment claim and the discrimination claims set forth in his administrative charge rose from the same conduct or involved the same individuals. First, the undisputed evidence in this case does not support Plaintiff's assertion that the same individuals were involved in the alleged harassment and termination. The alleged harassment is based primarily on Cychosz's actions: Cychosz directed his subordinates to tell Plaintiff that he was not allowed to carry his backpack at work; Cychosz did not reissue Plaintiff's radio; Cychosz instructed Plaintiff not to attend the morning meetings; and Cychosz (and Riordan) assigned Plaintiff temporary painting duties. In line with this, Plaintiff testified that he believed Cychosz had been harassing him "for years." See, *e.g.*, [21-2] at 232:16–18. And yet, Plaintiff's charge of discrimination does not implicate Cychosz at any point; Riordan is the only individual named in that document. Although the IDHR Notice of Dismissal contains a few isolated references to Cychosz, as may be expected due to his supervisory position, all appear to be benign and none connect Cychosz with any allegations of harassment. See, *e.g.*, [21-8] at 7 ("Complaint stated that he voiced his concern that the duty of painting violated his work restrictions relating to his Knee Disorder to his direct supervisor, Ray Cychosz * * *, Director of Engineering. Complainant stated that Cychosz advised him that if there was something he could not do or needed help with to contact Mathew Griskell * * *.").[4]

Further, the record in this case does not indicate that Plaintiff's harassment claim before this Court is based on the same conduct presented to the IDHR. Plaintiff argues that the claims are related because the alleged harassment "played a part" in his suspension and termination, *i.e.*, but for the harassing actions, he would not have had to seek out Griskell in a guest room on

---

[4] Plaintiff's response brief claims that he was harassed by several employees, including Cychosz, Riordan, and Brett Schurr. Plaintiff does not describe any harassment by Riordan or Schurr, he does not cite to any evidence to support this assertion, and the Court did not locate any such evidence.

September 23.  [29] at 5.  Again, these instances were not presented to the IDHR and Plaintiff did not relay to the Commission any intimation of harassment.  Although the five instances of harassing conduct highlighted by Plaintiff may provide context and support for Plaintiff's claim that his termination was discriminatory, "the discrimination and harassment charges are not so closely related that [the Court] can justify departing from the general rule of distinguishing among different forms of discrimination."  *Sitar*, 344 F.3d at 727 (finding plaintiff's EEOC charge did not support a broader range of claims, but was instead limited to a retaliation claim); see *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110–12 (7th Cir. 1992) (where plaintiff had submitted a brief and general charge referencing her termination, finding that her racial discrimination claims were properly preserved but that her racial harassment claims were never properly presented to the EEOC).  Finally, the fact that Plaintiff has developed his discrimination claim more broadly before this Court cannot serve to retroactively amend his charge of discrimination so as to include his harassment claims in the claims exhausted before the IDHR.  Accordingly, it is not reasonable to infer a harassment claim from Plaintiff's charge of discrimination, and therefore this claim is procedurally barred.  See *Cheek*, 31 F.3d at 504–05.[5]

---

[5] Even if the charge of discrimination did encompass a harassment claim, that claim would fail here.  The Seventh Circuit has assumed without deciding that the ADA recognizes a claim for hostile work environment.  *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).  A hostile work environment exists "where an employee experiences harassment that is so severe or pervasive as to alter the conditions of employment and create an abusive working environment."  *Id*. (internal quotation marks omitted).  The plaintiff must demonstrate that the workplace was both subjectively and objectively hostile.  *Id*.  Even taking all of Plaintiff's assertions regarding the five instances of harassing conduct as true, he has failed to put forth sufficient evidence of conduct that was sufficiently pervasive and severe so as to create an issue for trial as to whether his working environment was abusive.  At most, Plaintiff has presented evidence that he may have desired different temporary work and was displeased to be without a radio and not attending the morning meetings.  Further, Plaintiff emphasizes that he was "offended" by the instruction not to carry his backpack at work, but the undisputed evidence demonstrates that the instruction was quickly retracted and Plaintiff did not comply with it anyway.  Overall, the incidents put forth by Plaintiff are isolated and not particularly severe and such conduct is not sufficient to sustain a hostile work environment claim.  See *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) ("offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work

## 2. Failure to Accommodate

Similarly, Defendant contends that Plaintiff's charge of discrimination does not encompass any claim that it failed to accommodate Plaintiff's disabilities. The Court agrees.

In this lawsuit, Plaintiff argues that Defendant violated the ADA by failing to make reasonable accommodations for his disability. Specifically, Plaintiff claims that the temporary painting duties he was assigned upon his return to work were not compliant with his medical restrictions and that Defendant should have permitted him to perform light duty work in the carpentry shop instead. See [29] at 7. Plaintiff did not include any of these specific allegations in his charge of discrimination, nor did he not raise Defendant's purported failure to accommodate during the IDHR's investigation. And although Plaintiff argues the merits of his failure to accommodate claim in his response brief, he fails to argue that this particular claim is reasonably related to the allegations in his charge of discrimination beyond generically stating that all of his ADA claims are "factually related in that [they] involve the same conduct and same individuals." *Id*. at 5.

Plaintiff's cursory arguments are not sufficient to demonstrate that his charge of discrimination encompassed his accommodation claim. The Seventh Circuit has held that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA." *Green*, 197 F.3d at 898 (noting that the two claims are analyzed differently under the law). "Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id*.; see also *Aberman v. Bd. of Educ. of City of Chicago*, 2014 WL 4912139, at *4 (N.D. Ill. Sept. 30, 2014) (same); *Kaplan v. New Trier*

---

environment claim) (quotation omitted). Moreover, Plaintiff has offered no evidence to suggest that any alleged harassment was based on his disability.

*High Sch.*, 2011 WL 2148936, *3 (N.D. Ill. May 31, 2011) (holding that a failure to accommodate claim exceeded the scope of an EEOC charge that alleged only disability discrimination). In fact, this case is similar in many ways to *Green*, where the plaintiff alleged that her employer failed to provide her with a "suitable desk chair," "appropriate dimmer lighting," and a handicap parking spot to accommodate her disabilities. *Green*, 197 F.3d at 898. After the plaintiff was fired for insubordination, unauthorized removal of company property, and alteration of personnel records, she filed a charge of discrimination with the EEOC claiming only that she had been fired because of her disabilities. *Id*. at 896–97. On those facts, the Seventh Circuit concluded that the plaintiff's accommodation claim had nothing to do with her complaint that she was wrongfully terminated. *Id*. at 898.

Although several courts in this circuit—including this Court—have concluded that *Green* does not state a bright-line rule that failure to accommodate claims can *never* be "reasonably related" to a disability discrimination claim stated in an EEOC charge, the Court finds no reason to deviate from *Green* here. Specifically, this is not a case where the defendant's alleged failure to accommodate actually caused the plaintiff to be fired. See *Morales v. Goodwill Indus. of Se. Wisc., Inc*., 2014 WL 4914255, at *4 (N.D. Ill. Sept. 30, 2014) ("These cases, as well as the case at bar, differ materially from *Green* because in each one, the conduct underlying the discrimination claim did 'ha[ve] [some]thing to do with' the conduct underlying the accommodation claim. In each case, it was the defendant's alleged failure to accommodate that actually caused the plaintiff to be terminated."); see, *e.g*., *Love v. First Transit, Inc.*, 2017 WL 1022191, at *4 (N.D. Ill. Mar. 16, 2017) (finding accommodation and disparate treatment allegations stemmed from "interrelated facts" where plaintiff's theory was that defendant "failed

to accommodate her disability by terminating her for a disability-related absence"); *Ortiz v. Bd. of Educ. of City of Chicago*, 2013 WL 3353918, at \*5 (N.D. Ill. July 2, 2013) (same).

Here, there is nothing in Plaintiff's charge of discrimination, his complaint, or in the summary judgment record that indicates that Plaintiff requested, and was refused, a specific accommodation. The record reflects that Defendant assigned Plaintiff two types of temporary painting work as an accommodation for his medical restrictions, and that Defendant's agents believed that this work complied with his restrictions. Even looking past this and assuming that Defendant did fail to accommodate Plaintiff's disability, Plaintiff has not offered any tangible support for his argument that the lack of accommodation and his termination are related. At most, Plaintiff offers the tenuous line of reasoning that if he had been given other accommodating duties, he may not have had to go to the guest room to speak to Griskell, and he then may not have been in situation where he was observed conducting non-work-related conversations in a prohibited area. This only serves to highlight that Plaintiff's accommodation and discrimination claims are not *reasonably* related. On record before it, the Court cannot find a failure to accommodate that led to Plaintiff's suspension and termination.[6]

---

[6] As is evident by this discussion, even if failure-to-accommodate allegations had been properly included in Plaintiff's charge, his claim still would not survive summary judgment. To establish a claim for failure to accommodate, Plaintiff must establish that: (1) he is a qualified individual with a disability; (2) Defendant was aware of his disability; and (3) Defendant failed to reasonably accommodate that disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). A plaintiff "typically must request an accommodation for his disability in order to claim that he was improperly denied an accommodation under the ADA." *Id.* Here, Plaintiff complains that the temporary painting work violated his medical restrictions, but the undisputed evidence shows that he twice requested, and twice received, accommodations that Defendant's agents believed to be reasonable. "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998) (citation and internal quotation marks omitted). "It is the employer's prerogative to choose a reasonable accommodation." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). After being switched to paint the stairs and handrails, Plaintiff did not make any additional requests for accommodations, let alone any requests that were refused or ignored. In short, Plaintiff's preference for light carpentry work over the painting work he was assigned is insufficient to allow him to proceed on

Overall, the Court concludes that Plaintiff's harassment and failure to accommodate claims were not encompassed by his charge of discrimination. Because Plaintiff did not exhaust these claims, summary judgment in favor of Defendant is warranted on them.

### B. Disparate Treatment

"The ADA prohibits employers from taking adverse employment actions against their employees because of a disability." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012); see 42 U.S.C. § 12112(a). An employee may state a claim for discrimination under the ADA by advancing a "disparate treatment" theory—that is, the employer treated the employee differently *because of* his disability. *Siebers v. Wal–Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997).

In *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 763–66 (7th Cir. 2016), the Seventh Circuit abandoned the long-standing practice of distinguishing between the "direct" versus "indirect" methods of analyzing employment discrimination claims. Instead, *Ortiz* instructs that the "legal standard" that courts must apply "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's * * * proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. The "sole question" that must be answered is "[w]hether a reasonable juror could conclude that [Plaintiff] would have kept his job if he [was not disabled], and everything else had remained the same." *Id.* at 764. The Court is to consider the evidence as a whole, rather than asking whether any particular piece of evidence proves the case by itself. *Id.* at 765.

*Ortiz* did not, however, alter the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Rather, *Ortiz* makes clear that "*McDonnell*

---

this theory. As a final point, the record establishes that Plaintiff never requested an accommodation on the basis of his diabetes or hypertension.

*Douglas* is not the only way to assess circumstantial evidence of discrimination." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Because the *McDonnell Douglas* framework survives *Ortiz* and because the parties have presented their arguments in those terms, the Court will first assess Plaintiff's claim under *McDonnell Douglas*. The Court will then "assess cumulatively" all of the evidence presented by Plaintiff to determine whether it permits a reasonable factfinder to determine that his suspension and termination was attributable to his disability. *David*, 846 F.3d at 224; *Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 956–57 (N.D. Ill. 2016). If a reasonable factfinder could not, then summary judgment is appropriate.

### 1.    *McDonnell Douglas*

Under the burden-shifting framework of *McDonnell Douglas*, a plaintiff must first state a *prima facie* case of discrimination by demonstrating, by a preponderance of the evidence, that: (1) he is a member of a protected class; (2) at the time of termination, he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than nondisabled employees who are "similarly situated." See *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). Once Plaintiff establishes a *prima facie* case of disability discrimination, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for the employee's termination." *Id.* "An employer that has proffered a legitimate, non-discriminatory reason for the discharge is entitled to summary judgment unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995).

Here, Defendant does not contest that Plaintiff is disabled within the meaning of the ADA, 42 U.S.C. § 12102(1) (defining "disability"), or that Plaintiff's suspension and firing were

adverse employment actions. See *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits"). The parties dispute whether Plaintiff was meeting Defendant's legitimate expectations when he was caught discussing a crossword puzzle in a guest room, but the Court need not address that factor yet because Plaintiff has not offered any argument or evidence for the fourth prong of the *McDonnell Douglas* test. Specifically, Plaintiff has not presented any affidavits, depositions or other evidence demonstrating that similarly situated non-disabled employees engaged in similar misconduct but were not suspended or discharged.

To be sure, the summary judgment record contains evidence regarding two other employees of Defendant's engineering department—painting foreman Matt Griskell and general engineering department employee John Pinski—but those individuals are not adequate comparators for this analysis. First, Plaintiff alleges that Griskell was also disabled and it is undisputed that Griskell was suspended and terminated in lockstep with Plaintiff for the same infraction. Accordingly, Griskell cannot serve as an example of a comparator who received more favorable treatment. Looking next at Pinski, the record is not conclusive on whether Pinksi was disabled, although it indicates that at one time he filed a workers' compensation claim. This evidence alone is not enough to demonstrate that Pinksi was in the same protected class as Plaintiff. Even if he was, Plaintiff has provided no evidence or allegation that Pinski committed a policy or rule infraction similar to his own. See *Orton–Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) ("In general, a plaintiff who believes another individual is similarly situated must at least show that this comparator * * * engaged in similar conduct without such differentiating or

mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him].") (citation and internal quotation marks omitted) (alterations in original); *Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 594–95 (7th Cir. 2010) (affirming a grant of summary judgment for defendant employer where plaintiff failed to show that there were similarly situated comparators who received favorable treatment, where there was no evidence that alleged comparators violated employer's policies to the degree that plaintiff did or that they had trouble completing their work the way plaintiff did); cf. *Steen*, 486 F.3d at 1022 (explaining that summary judgment is the "put up or shut up moment" in a case). Because Plaintiff has failed to demonstrate a triable issue as to whether comparators received more favorable treatment, Plaintiff has not established a *prima facie* case of discrimination under the *McDonnell Douglas* framework.

### 2. Cumulative Assessment of All Evidence

Next, consistent with *Ortiz*, the Court will assess cumulatively all of the evidence presented by Plaintiff without the assistance of the *McDonnell Douglas* paradigm to evaluate whether a reasonable factfinder could conclude that Plaintiff was suspended and terminated because of his disability. See *David*, 846 F.3d at 224.

As an initial matter, Defendant has provided a legitimate, nondiscriminatory reason for firing Plaintiff: he violated Defendant's policies against being in unauthorized areas for non-work reasons, of which Plaintiff was aware, when Plaintiff was observed discussing a crossword puzzle with a co-worker in a guest room. Plaintiff does not believe that he violated Defendant's policy, and therefore he believes that his termination must have been based on improper motives—namely those concerning his knee injury, diabetes, and hypertension. Plaintiff points to the following pieces of evidence that he believes demonstrate an illicit motive: (1) Defendant

put in motion several events that caused Plaintiff to be in the guestroom with Griskell (*e.g.*, it assigned him painting duties under Griskell and took away his radio), and (2) Plaintiff was meeting Defendant's legitimate job expectations at the time he was terminated. See [29] at 4–5.

First, Plaintiff has not provided any evidence that would lead to the inference that Defendant assigned him painting duties and took away his radio in order to put Plaintiff in a situation where he could not avoid (i) committing a policy violation and (ii) being observed committing that policy violation. Even if he somehow could show this, Plaintiff has not put forth any evidence showing that Defendant was improperly motivated by Plaintiff's disability in taking these actions. To the contrary, the uncontroverted evidence demonstrates that Defendant assigned Plaintiff temporary painting duties because Defendant believed such duties satisfied his post-surgery medical restrictions, *i.e.*, to accommodate Plaintiff's disabilities.[7] In addition, the record is devoid of evidence that would indicate that taking away Plaintiff's radio after his surgery was the result of anything other than a business decision based on Plaintiff's new assignment. See [21] at ¶¶ 36–37. Plaintiff's argument also ignores the fact that Defendant's reason for terminating him was not simply that he was in a guest room. Plaintiff was fired because he was in a guest room *and* conducting non-work business there. Although the factors listed by Plaintiff could be understood to take him to Griskell's location for work-related questions, no evidence in the record leads to the inference that Defendant's actions caused him to discuss a crossword puzzle. The relationship between Plaintiff's painting assignment and lack of radio and his termination is, at most, sequential. In short, the evidence simply does not support Plaintiff's contention that Defendant "set him up to fail" and caused his termination by giving him painting responsibilities and taking away his radio.

---

[7] The Court notes that Plaintiff disagrees that the painting duties were in line with his medical restrictions. The undisputed evidence in the record, however, demonstrates that Cychosz and Riordan believed the painting duties were appropriate and complaint with Plaintiff's doctor's notes.

Plaintiff also argues that the fact that he was meeting Defendant's legitimate expectations means that his termination was premised on improper disability discrimination. The Court cannot agree on the evidence before it. The parties do not dispute that Defendant had a policy against employees visiting guestroom floors except in the scope their work. See [28] at ¶¶ 7, 66. The parties also do not dispute that Griskell asked Plaintiff a question about a crossword puzzle in a guestroom and that another employee observed and reported this behavior. *Id*. at ¶¶ 58–62, 65. Accordingly, Plaintiff failed to comply with Defendant's policies, and he therefore was not "meeting his employer's legitimate expectations." See *Cackovic v. HRH Chicago, LLC*, 2014 WL 2893198, at *7 (N.D. Ill. June 26, 2014) (diabetic plaintiff "cannot establish that she was meeting HRH's legitimate business expectations when she was terminated for violating company policies by taking an unauthorized break in a guest room and failing to advise her supervisor of taking a break"); *Anderson v. Jewel Food Stores, Inc.*, 837 F. Supp. 2d 826, 833 (N.D. Ill. 2011) (Plaintiff "has not presented evidence raising a genuine dispute as to any material fact that she was meeting Jewel's legitimate job expectations because she violated the food handling and coding policies in May 2008"); *Toussaint v. Sheriff of Cook Cty.*, 2000 WL 656642, at *5 (N.D. Ill. Mar. 23, 2000) ("Once [plaintiff] failed the drug test, he no longer met his employer's legitimate expectations because he violated his employer's zero-tolerance anti-drug policy.").

In his response, Plaintiff disputes that he violated hotel policy in connection with the guest room incident. But the "court is not a super personnel department that second guesses employers' business judgments." *Riley v. Elkhart Cmty. Schools*, 829 F.3d 886, 895 (7th Cir. 2016) (internal quotation marks and citation omitted). Put differently, the Seventh Circuit "has long championed an employer's right to make its own business decisions, even if they are wrong or bad. Therefore, regardless of whether it is correct in its beliefs, if an employer acted in good

faith and with an honest belief, we will not second-guess its decisions." *Green*, 197 F.3d at 899.

Plaintiff's dispute with Defendant's interpretation of its policy and with Defendant's decisions based on that policy, without more, does not lead to the inference that his termination was based on his disabilities. And as long as Defendant's decision to terminate Plaintiff was not impermissibly premised on his disabilities, the Court cannot question the extent to which Plaintiff did or did not violate Defendant's policy.

Plaintiff next argues that he was meeting Defendant's expectations because he was generally meeting the expectations of his position as a carpenter and a painter. Assuming this is true (in the absence of any real basis to conclude as much from Plaintiff), for the reasons already discussed, because of his policy violation, Plaintiff cannot demonstrate that he was meeting Defendant's legitimate expectations. The Court takes a step back to note that all of Plaintiff's arguments that he was meeting Defendant's legitimate expectations as an employee are just that—arguments. Although Plaintiff states that "there is evidence in the record" stating that he was meeting his employment expectations, see [29] at 4, he has failed to cite to any such evidence or support his contentions with case law. "[A]rgument is insufficient to avoid summary judgment; the nonmoving party needs to come forward with evidence." *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (citations omitted) (emphasis removed).

Considering other evidence in the record, the Court does not find sufficient evidence to create an issue for trial as to whether Plaintiff's suspension or termination—or any of the actions of which Plaintiff complains—were taken on account of Plaintiff's disability or that otherwise supports his disparate treatment claim. In fact, other record evidence serves to further undermine his claims. For example, Plaintiff admits that he never made any complaints of discrimination (or harassment or retaliation) to Defendant's Human Resources Department, and Plaintiff admits

that he never heard Cychosz, Riordan, or Zec make discriminatory comments about him. On the whole, Plaintiff has failed to "show what evidence [he] has that would convince a trier of fact to accept [his] version of events," see *Steen*, 486 F.3d at 1022, and the Court cannot perform this task for him. See *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (internal quotation marks omitted). Without any evidence tending to show that Defendant was improperly motivated, Plaintiff's summary judgment arguments are supported only by speculation or conjecture that his termination was premised on his disability. This does not suffice. See *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). In sum, based on a cumulative assessment of all of the evidence, viewed in the light most favorable to Plaintiff as the Court must, the Court concludes that no reasonable factfinder could find that Defendant discriminated against him *because of* his disabilities. Therefore, the Court grants summary judgment for Defendant on Plaintiff's ADA claim (Count I).

## C. Retaliatory Discharge

Given the foregoing conclusion that Defendant is entitled to summary judgment on Plaintiff's federal claims under the ADA (Count I), the Court must consider whether to exercise its supplemental jurisdiction over Plaintiff's remaining state law retaliatory discharge claim (Count II). Where a district court has original jurisdiction over some claims, it has supplemental jurisdiction over other claims that are so related that they form part of the same case or controversy. 28 U.S.C. § 1367(a); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). If the court has dismissed all claims over which it has original jurisdiction, the court's supplemental jurisdiction persists, but the court has discretion to decline to exercise supplemental jurisdiction.

28 U.S.C. § 1367(c)(3); *Miller*, 600 F.3d at 738 (noting that the decision whether to exercise supplemental jurisdiction is "squarely within [the district court's] discretion").

As the Seventh Circuit has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). However, exceptions to this general rule exist:

> (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (citation and internal quotation marks omitted). In this instance, the Court concludes that exceptions (2) and (3) above both apply. As the length of this opinion reflects, the Court has devoted considerable resources to sorting out both the facts and the law in this case, and the federal and state law claims rest on the same core set of operative facts. Prudence dictates that the Court resolve the state law claim to avoid duplication of judicial effort, especially where (as here) the application of state law to the dispositive causation element of the state law cause of action is abundantly clear.

"Generally, an at-will employee may be discharged for any reason or for no reason at all." *Roger v. Yellow Freight Sys., Inc*., 21 F.3d 146, 149 (7th Cir. 1994). In Illinois, however, it is unlawful to terminate an employee in retaliation for exercising her rights under the Illinois Worker's Compensation Act ("IWCA"). *Beatty*, 693 F.3d at 753; *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181 (1978). For claims alleging retaliatory discharge for the exercise of IWCA rights, a plaintiff must show that: (1) he was employed by the defendant before being injured; (2) he exercised a right under the IWCA; and (3) his discharge was causally connected to the

exercise of his right.  *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citation omitted).  Defendant admits that the first two elements are satisfied here, and accordingly, the only issue is whether Plaintiff can establish the element of causation.

The Seventh Circuit has held that in deciding motions for summary judgment on Illinois retaliatory discharge claims, federal courts are to follow Illinois law rather than the federal *McDonnell Douglas* burden-shifting approach in determining whether a plaintiff has met his burden on causation.  *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010).  Accordingly, a plaintiff may not survive summary judgment "merely by proving that the reasons given by [Defendant] for firing him were unworthy of belief," as he would under the *McDonnell Douglas* framework.  *Id.*  Instead, to establish a causal relationship, Plaintiff must affirmatively show that the discharge was primarily in retaliation for his exercise of a protected right.  *Gordon*, 674 F.3d at 774.  In other words, Plaintiff must present "sufficient evidence from which a reasonable jury could infer that the employer was improperly motivated."  *Id.* (citing *Roger*, 21 F.3d at 149); see also *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 163 (1992) (the ultimate issue to be decided is the employer's motive in discharging the employee).  It is not enough for the plaintiff to establish that his workplace injury and initiation of a workers' compensation claim set in motion a chain of events that ended in his discharge.  *Phillips v. Cont'l Tire The Americas, LLC*, 743 F.3d 475, 478 (7th Cir. 2014).  In addition, "the element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee."  *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 707 (7th Cir. 2008) (citing *Hartlein*, 151 Ill. 2d at 160); *Williams v. Office of Chief Judge of Cook County, Ill.*, 839 F.3d 617, 622 (7th Cir. 2016) ("So long as the reason for a discharge is wholly unrelated to an employee's claim for benefits, the employer is not liable for retaliatory discharge.").

Here, Defendant has offered a valid basis for terminating Plaintiff's employment; namely, his violation of hotel policy. The termination decision was made by Riordan and Zec, who made the made the decision following an investigation of the incident where Plaintiff and Griskell were observed in a guest room discussing a crossword puzzle. The parties do not dispute that Plaintiff had not heard Riordan or Zec (or even Cychosz) make derogatory comments about Plaintiff's workers' compensation claim.

Faced with these facts, Plaintiff argues that Defendant's stated reason for terminating him was pretextual. A pretext argument alone is insufficient to establish the element of causation. *Gacek*, 614 F.3d at 303; see *Robinson v. Stanley*, 2011 WL 3876903, at *6 (N.D. Ill. Aug. 31, 2011) (granting summary judgment on plaintiff's state law retaliatory discharge claim because plaintiff did not provide any evidence of causation and instead simply argued that defendants' proffered reason for terminating her employment was a pretext for retaliatory discharge). "To show pretext a plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to 'cover [its] tracks.'" *McCoy v. Maytag Corp.* 495 F.3d 515, 522 (7th Cir. 2007) (quoting *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005)). Plaintiff offers three arguments to support his theory that Defendant was improperly motived, which the Court will address in turn. Notably, Plaintiff does not cite to any case law to support his arguments.

Plaintiff argues that Defendant had a "pattern of dishonesty" in handling workers' compensation claims and disabled employees generally. See [29] at 9. As support, Plaintiff points to allegedly inaccurate statements made in Defendant's summary judgment briefing and in the summary judgment record concerning Griskell and Pinski. Specifically, Plaintiff disputes Defendant's characterization of Griskell as non-disabled (Plaintiff claims that Defendant knew

that Griskell was disabled) and its description concerning the end of Pinksi's employment (Plaintiff claims that Pinski was fired; Defendant claims that Pinski resigned). Accepting the facts as set forth by Plaintiff, the Court does not find that they are material to Defendant's motive with regard to *Plaintiff's* termination. Insofar as Plaintiff is asking the Court to infer that the factual discrepancies regarding Griskell's and Pinski's employment details in Defendant's summary judgment filings in this Court create an issue for trial as to whether Defendant was lying in the reason it gave for Plaintiff's termination in September 2013, the Court is unwilling to make that leap on the record before it. Even if this were proper, it would only show that Defendant's stated reason for terminating Plaintiff's employment was "unworthy of belief," which is not sufficient in this situation where Plaintiff affirmatively must show improper motivation. *Gordon*, 674 F.3d at 774.

Similarly, the Court cannot reasonably infer a retaliatory motive based on Cychosz's statement that he did not know what to do with Plaintiff following his review of Plaintiff's second Return to Work note. Cychosz's comment had nothing to do with Plaintiff's workers' compensation claim. The statement regarded Plaintiff's injury, but the record shows that Cychosz and Riordan assigned Plaintiff a new painting task on account of his modified medical restrictions, not that this was a factor in Plaintiff's eventual termination. Finally, the undisputed facts indicate that Cychosz was not involved in the decision to terminate Plaintiff, and as such, his statement does not create a question for trial as to whether Defendant had retaliatory motive. See, *e.g.*, *Sola v. Ill. Human Rights Comm'n*, 316 Ill. App. 3d 528, 542 (1st Dist. 2000) ("Stray remarks, including isolated statements, statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself, are insufficient to establish discrimination.").

Plaintiff also argues that "[a] reasonable jury could infer Plaintiff's termination was pretextual due to the timing of the filing and Plaintiff's subsequent discharge." [29] at 8–9. Although Illinois courts have held that suspicious timing can support an inference of retaliation, see *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009), the "causality requirement calls for more than a sequential connection." *Roger*, 21 F.3d at 149; see also *Gordon*, 674 F.3d at 775. Consistent with the Court's earlier conclusion that Plaintiff's other arguments concerning pretext are unsuccessful, all Plaintiff has pointed to here is evidence of a sequential connection. The mere fact that Plaintiff was terminated two months after he filed his workers' compensation claim cannot, on its own, create the inference that the defendant was improperly motivated. See *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 888 (N.D. Ill. 2014) (two-months between plaintiffs' filing of a workers' compensation claim and his termination alone did not demonstrate causation); see also *Carter v. Tennant Co.*, 2003 WL 21418231, at *7 (N.D. Ill. June 16, 2003) ("On its own, the relevant time span in this case is not compelling circumstantial evidence of wrongdoing."), aff'd, 383 F.3d 673 (7th Cir. 2004). Furthermore, as Defendant points out, the Seventh Circuit has concluded that the violation of workplace guidelines can be an intervening event that separates a protected activity from a discharge. See, *e.g.*, *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (proximity of events does not imply causation where there is a significant intervening event separating an employee's complaints from his discharge).

In sum, the Court concludes that the Defendant has offered a valid basis for discharging Plaintiff, and Plaintiff has not offered sufficient evidence from which a reasonable jury could infer that Defendant was "improperly motivated," *i.e.*, that Plaintiff's discharge was related to his claim for benefits. *Gordon*, 674 F.3d at 774 (quoting *Roger*, 21 F.3d at 149)); see also *Henry v.*

*TDS Metrocom*, 2005 WL 1651044, at *15 (N.D. Ill. July 8, 2005) (granting summary judgment on retaliatory discharge claim where none of the evidence cited by the plaintiff related to the defendant's motive for terminating her employment; "[s]imply because TDS personnel knew of her worker's compensation claim * * * does not suggest her termination was motivated by retaliation for the claim").  Because Plaintiff cannot satisfy the causation element, his state law retaliatory discharge claim cannot survive summary judgment.

IV.    **Conclusion**

For the reasons stated above, the Court grants Defendant's motion for summary judgment [19].  The Court will enter final judgment and close the case.

Dated:  August 17, 2017

_____
Robert M. Dow, Jr.
United States District Judge